IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| RUTH ANN WARNER as Guardian of | ) | |
| JONATHAN JAMES BREWSTER WARNER, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:18cv00064 |
| | ) | |
| MICHAEL R. DOUCETTE, | ) | |
| Defendant. | ) | |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Michael R. Doucette, the Commonwealth's Attorney for the City of Lynchburg prior to

his retirement, submits this memorandum in support of his motion to dismiss this action brought

by plaintiff Ruth Ann Warner, as Guardian of Jonathan James Brewster Warner ("Warner"). It is

respectfully submitted that this action is without merit and should be dismissed.[1]

## **ALLEGATIONS AND BACKGROUND**

The Complaint alleges that Michael Doucette was "acting under color of state law in his

capacity as the elected Commonwealth's Attorney for the City of Lynchburg, Virginia" at all

times relevant to plaintiff's claims.[2]

---

[1]This lawsuit is one of several lawsuits the same attorney has brought, in various courts, and representing different plaintiffs against a variety of defendants, related to the same event.

[2]Complaint ¶¶ 1, 6 ("Doucette was, on June 1, 2016, the elected Commonwealth's Attorney of the City of Lynchburg, Virginia") (the Complaint's stylistic presentation of names in all capitals has been altered to initial capitals only in this memorandum).

Doucette retired from the Lynchburg Commonwealth's Attorney's Office after working there for more than three decades, including serving as the Commonwealth's Attorney for over a decade through the end of his term December 31, 2017. https://www.newsadvance.com/news/local/lynchburg-honors-doucette-s-tenure-in-commonwealth-s-attorney-s/article_8b6da0e2-d583-11e7-a167-1f51db1ab60b.html (last accessed September 20, 2018);
https://www.newsadvance.com/townnews/politics/a-prosecutor-and-our-first-responders/article_

The Complaint alleges that on January 11, 2016, Warner was shot by a security guard at Lynchburg General Hospital.[3]

The Complaint alleges that "Doucette obtained the content of Warner's health records during the course of the investigation" in which "investigation of the shooting [he] worked closely with the Lynchburg Police Department[.]"[4]

The Complaint alleges that 4½ months after the incident, "[o]n June 1, 2016, Doucette conducted a press conference and issued a press release to discuss the results of his investigation and to explain his decision not to charge anyone criminally."[5]

The Complaint makes the following cryptic, conclusory, assertion:

> During the course of the press conference and in the text of the press release, Doucette revealed and redisclosed sensitive content from Warner's health records, discussing with specificity information taken from Warner's medical records, including Warner's psychiatric conditions, history, treatment and medication.[6]

Plaintiff asserts Count One federal and Count Two state law "invasion of privacy" claims, contending that Warner "had a reasonable expectation of privacy in his health records," and that "Doucette had no right or legal justification" to disclose anything from Warner's health records

---

cc38f079-0abb-5dbb-8871-06fd351c8229.html ( September 20, 2018). *Ashbaugh v. Corporation of Bolivar*, 481 F. App'x 840, (4th Cir. 2012) (dismissing appeal; "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"), *cert. denied*, 568 U.S. 1230 (2013).

[3] Complaint ¶ 7.

[4] Complaint ¶¶ 8, 9.

[5] Complaint ¶ 11.

[6] Complaint ¶ 12.

2

in the press release or press conference in which Doucette explained his decision not to file criminal charges against either Warner or against the security guard.[7]

Public court records show that on January 11, 2016, Lynchburg Circuit Court Magistrates issued search warrants relating to the offense of malicious wounding in violation of Va. Code § 18.2-51 in connection with the incident in Lynchburg General Hospital, including for Warner's records at the Hospital, and Lynchburg Police Department Detectives filed affidavits in connection with the Magistrates' issuance of those warrants. The Detective's affidavit for the warrant issued by the Magistrate at 12:42 p.m. on January 11, 2016, includes:

> On January 10, 2016, at approximately 2130 hours, Jonathan J. Warner dob [] arrived at the Lynchburg General Hospital emergency room and was being seen for a psychiatric evaluation. Then on January 11, 2016, at approximately 0415 hours, Warner was transferred across the driveway to the Psychiatric Emergency Center, Dillard Building, Lynchburg General Hospital. Upon arriving there, Warner was filling out some documentation at the center. He became increasingly more agitated and then attacked Lieutenant Wesley Gillespie (Centra Security). During the scuffle he unsuccessfully attempted to disarm Lieutenant Gillespie of his firearm, however he was able to disarm Lieutenant Gillespie of his taser. Warner then fired the taser . . . .[8]

---

[7]Complaint ¶¶ 15, 20, 21.

[8]A certified copy of that subpoena is attached as Exhibit 1. *See also* certified copy of search warrant issued at 1:45 p.m. on January 11, 2016 relating to the offense of malicious wounding in violation of Va. Code § 18.2-51 in Commonwealth of Virginia v. Jonathan J. Warner/W.T. Gillespi, with the affidavit of a different Lynchburg Police Department Detective (attached as Exhibit 2, and including the same statements). *See also* https://jamesriverlegal.com/index.php/site-map/press-releases/01-27-16 (last accessed September 20, 2018) (plaintiff's attorney's January 27, 2016 press release on his firm website including a link to the search warrant affidavit) (attached as Exhibit 9).

> A district court is required to consider documents incorporated into the complaint, and documents attached to a motion to dismiss that are integral to and relied on in the complaint. In addition, a court may take judicial notice of matters of public record in considering a motion to dismiss.

As the public record further amply shows, the plaintiff and Warner have been represented with respect to this incident since the outset in January 2016 by the same attorney representing the plaintiff in this lawsuit, and from the outset they put into the public record, including through their attorney and press releases, detailed information regarding Warner's health and psychiatric conditions, history, treatment and medication.[9]

_____

*Lewis v. Newton*, 616 F. App'x 106 (4th Cir. Sept. 24, 2015) (affirming dismissal on Rule 12(b)(6) motion to dismiss and the district court's consideration of records attached to the motion to dismiss in doing so) (internal citations omitted); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) ("[a] district court may clearly take judicial notice of these public [state court] records," affirming dismissal); *Sec'y of State for Def. v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("[i]n reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record," whether attached to complaint or to motion to dismiss, affirming dismissal); *see also Massey v. Ojaniit*, 759 F.3d 343, 347-48, 352-53 (4th Cir. 2014) (matters of public record among what is properly considered by a court on a motion to dismiss directed to the pleadings)*; Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (affirming Rule 12(b)(6) dismissal and considering information publicly available on website in analyzing complaint's sufficiency), *cert. denied*, 544 U.S. 961 (2005).

In addition, when federal court subject matter jurisdiction is at issue, the Court may look beyond the allegations of the complaint to determine whether subject matter jurisdiction exists. *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995) (granting motion to dismiss for lack of subject matter jurisdiction), *aff'd*, 74 F.3d 517 (4th Cir. 1996).

[9]*See,e.g.,*
https://www.newsadvance.com/news/local/family-questions-lynchburg-hospital-shooting-son-remains-in-critical-condition/article_2468c242-4183-5641-99f0-4bfd2b9f0b40.html (last accessed September 20, 2018). As this January 13, 2016 Lynchburg News & Advance newspaper article references:

> Paul Valois, a Lynchburg attorney asked by [Jonathan] Warner's mother, Ruth Ann Warner-Bushey, to represent the family, issued a news release Wednesday questioning the official account of the shooting . . . Warner began exhibiting 'symptoms of anxiety' while eating dinner Sunday at a restaurant with his family, according to Valois, of James River Legal Associates. Recognizing the symptoms were related to an imbalance in his bipolar disorder medications, Warner went to the Lynchburg General Hospital Emergency Department, which is separate from Centra's psychiatric emergency department, for care at about 9 p.m. Sunday. While there, Warner-Bushey – who was with her son in the emergency department

On February 25, 2016, the plaintiff's attorney issued another press release, still posted on his law firm website, comprised of a letter to the Virginia Attorney General, copying Doucette.[10] The plaintiff's attorney's press release letter to the Attorney General states:

> I represent Jonathan Warner . . . [who] reported to the emergency room of the ER at CENTRA Lynchburg General Hospital on June 10th [sic] at approximately 9:30 pm with an acute psychiatric condition seeking admission to Virginia Baptist Hospital for adjustment of the medication he takes for schizophrenia. After waiting for nearly seven hours for medical clearance, he was transferred to the Psychiatric Emergency Center for psychiatric assessment, where he obtained and

> until about midnight, Valois said in the news release – informed Centra staff of Warner's medication problem and history of anxiety. After waiting in the emergency department for more than seven hours "and after a discussion ensued about a potential involuntary detention, Mr. Warner because upset and anxious and an incident occurred that resulted in Mr. Warner being shot at least four times by a Centra security officer," Valois said in the release.
> . . .
> Valois said in a news release he posted on his company website . . . the Warner family wants to know why Centra staff chose to "ignore" Warner-Bushey's warnings about her son's condition, why it took so long to evaluate Warner, why he was allowed access to weapons given Centra was considering an involuntary detention order, why lethal force was used against a patient with a Taser and why Warner was shot multiple times.

> The same article also references a Lynchburg Police Department news release, that "'Investigative findings indicate Warner attacked security officer Wes Gillespie while in the Dillard Building,'" and that the "Dillard Building . . . houses Centra's psychiatric emergency department."

> In addition, the article refers to the plaintiff having gone on "Facebook to voice her concerns," in posting "which she later deleted."

> Warner's father is quoted in the article regarding Warner's history "using 'a variety of drugs' including crystal meth, acid and 'just terrible things that debilitate the body and eat the brain'," and that "[u]pon his return [to Virginia] he was committed to the Western State Psychiatric Hospital in Staunton" for a "roughly year-long stay."

[10]*See* https://jamesriverlegal.com/index.php/site-map/press-releases/02-25-16 (last accessed September 20, 2018). For the convenient reference of the Court, a copy of that press release letter, also posted on the plaintiff's attorney's website, is attached as Exhibit 3.

discharged a TASER.

The plaintiff's attorney also on May 9, 2016, filed a lawsuit in Bedford General District Court against Gillespie, with a different Lynchburg General Hospital psychiatric patient as the plaintiff (Charlena Blakey) ("*Blakey v. Gillespie*"), in which lawsuit the plaintiff's attorney included numerous allegations regarding Warner's health and psychiatric conditions, history, treatment and medication.[11]

The May 27, 2016 Bill of Particulars that the plaintiff's attorney filed in *Blakey v. Gillespie* includes the following regarding Warner's psychiatric conditions, history, treatment, and the January 10-11, 2016 incident – and even attaches the Emergency Custody Order ("ECO")

_____

[11]*See* certified copy of *Blakey v. Gillespie* Warrant in Debt attached as Exhibit 4; certified copy of *Blakey v. Gillespie* Bill of Particulars attached as Exhibit 5.

The same day the plaintiff's attorney filed the *Blakey v. Gillespie* lawsuit in Bedford General District Court, the plaintiff's attorney issued document subpoenas in that lawsuit including to Centra Health, Inc. (Lynchburg General Hospital is "Centra Lynchburg General Hospital"). *See* certified copy of subpoena directed by plaintiff's attorney to Centra in *Blakey v. Gillespie* attached as Exhibit 6.

The Motion for Bill of Particulars Gillespie filed in *Blakey v. Gillespie* states (¶ 3):

[T]he subpoenas appear to be an attempt to obtain access to information to support a claim against Mr. Gillespie and others by Mr. Jonathan Warner and not Ms. Blakey. Mr. M. Paul Valois, Esquire, Ms. Blakey's attorney, also represents Mr. Warner. On behalf of Mr. Warner, he has asserted claims against various entities allegedly related to an incident at Lynchburg General Hospital on January 11, 2016 allegedly involving Mr. Warner and Mr. Gillespie. Many of the categories of information sought in Ms. Blakey's subpoena relate to Mr. Warner. . . . [I]t is difficult to determine if these are materials that might also be relevant to her claim or are simply an effort to collect information to support Mr. Warner's claim.

A certified copy of Gillespie's Motion for Bill of Particulars is attached as Exhibit 7.

6

for Warner issued by the Centra physician on January 11, 2016 at 1:18 a.m.:

28. On January 10, 2016, Jonathan Warner ("Mr. Warner") reported to the emergency room of Lynchburg General Hospital for treatment of an acute psychiatric illness.

. . .

33. Prior to January 11, 2016, Mr. Warner was a regular patient of both Horizon Behavioral Health ("Horizon") and Centra Health, Inc ("Centra").

34. On January 10, 2016, Mr. Warner reported to staff at the emergency room that he had not slept for days and was suffering from a poor adjustment of psychiatric medication.

35. At approximately 12:30 a.m., a Centra physician, Dr. Michael Dunlop, applied for and obtained an Emergency Custody Order ("ECO") from the magistrate authorizing the emergency custody of Mr. Warner. A true copy of this ECO is attached hereto and incorporated herein as **Exhibit D**.

36. In order to obtain an ECO Dr. Dunlop was required to swear or affirm that due to Mr. Warner's acute condition, Mr. Warner posed a threat to safety of himself or others.

. . .

38. Mr. Gillespie knew, or reasonably should have known, that Mr. Warner posed a danger to himself or others on January 11, 2016.

39. Mr. Warner's psychiatric condition steadily worsened after 12:30 a.m. - he became paranoid and began to experience intense auditory and visual hallucinations. He began to frantically pace and had to be redirected to an emergency room bay.

40. At approximately 4:15 a.m., a Centra physician ordered Mr. Warner to be transferred from the Emergency Room to the PEC [Psychiatric Emergency Center].

41. Mr. Gillespie and a female Centra security officer escorted Mr. Warner from the Emergency Room to the PEC.

. . .

48. Mr. Warner was suffering from extreme psychosis during his interaction with Mr. Gillespie.

. . .

7

82.  The incidents that led to the shooting of Jonathan Warner - Mr. Warner's attempt to disarm Mr. Gillespie, the ensuing struggle, the danger to patients and employees and the resulting injuries to Mr. Warner and Ms. Blakey were foreseeable. . . .

. . .

96.  Mr. Gillespie knew, or reasonably should have known, that Mr. Warner, due to his illness, posed a danger to himself or others on January 11, 2016.

*Blakey v. Gillespie* Bill of Particulars filed by plaintiff's attorney (attached as Exhibit 5).

Only after all that Warner and his family, including the plaintiff here and including through the plaintiff's attorney, and others, had put in the public domain regarding Warner's health and psychiatric conditions, history, treatment and medication, came the press release and conference in June 2016[12] in which then-Commonwealth's Attorney Doucette communicated his decision regarding criminal charges in connection with the incident in Lynchburg General Hospital and explaining his decision not to charge anyone criminally.

The Complaint does not allege a single fact of the alleged "sensitive content from Warner's health records" or "specific[] information taken from Warner's medical records, including Warner's psychiatric conditions, history, treatment and medication" allegedly disclosed by the Commonwealth's Attorney in what plaintiff terms the "press release" – actually the Commonwealth's Attorney's Report – or press conference, on which plaintiff bases her "invasion of privacy claims."  Nor does the Complaint allege, not even in a conclusory fashion, that Doucette disclosed anything that was not true.

_____

[12]The Complaint alleges that the "press release" and conference was on June 1, 2016 (¶¶ 1, 11, 22), but both the Commonwealth's Attorney's Report and press conference were actually on Friday, June 3, 2016.  *See* Commonwealth's Attorney's Report attached as Exhibit 8; https://wset.com/news/local/lynchburg-commonwealths-attorney-to-announce-hospital-shooting-findings-today (providing both a hyperlink to the Commonwealth's Attorney's Report as well as to video of the entire press conference) (last accessed September 20, 2018).

Furthermore, the Commonwealth's Attorney's Report and press conference, upon which plaintiff purports to base her claims – albeit without actually attaching them to the Complaint – belie plaintiff's conclusory assertions in that regard. The Court may also consider those documents on a motion to dismiss.[13]

Far from revealing "sensitive content" and discussing "specific[] information" from

---

[13]"It is well established that a court may 'consider documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (*quoting Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). *See also Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276 n.1 (4th Cir. 2014) (the Court also considers on a Rule 12(b)(6) motion to dismiss the "documents incorporated into the complaint by reference," and "the documents 'attached to the motion to dismiss' that are 'integral to the complaint and authentic'," *quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir .2009), respectively, and affirming Rule 12(b)(6) dismissal); *Belrose v. Hartford Life & Accident Ins. Co.*, 478 F. App'x 21 *1 n.1 (4th Cir. 2012) (affirming Rule 12(b)(6) dismissal and consideration of document attached to motion to dismiss); *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009) (same); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (document referred to in complaint was properly considered as incorporated in the complaint by reference, affirming dismissal of action without leave to amend).

In addition, when, as here, "[t]he complaint rests on mischaracterizations of the public record . . . and isolation of that statement from its context and from the wealth of other information publicly available when it was made," the Court properly considers the "context of all of the information publicly available," even on a motion to dismiss and without converting it to a summary judgment motion, and "strip[s] the [] allegations of mischaracterizations and exaggeration[.]" *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 615, 617, 618 (4th Cir. 1999) (affirming dismissal on motion to dismiss). *See also Davis v. Back*, 2010 WL 1779982 * 5 and n. 5 (E.D. Va. April 29, 2010) (considering on Rule 12(b)(6) motion to dismiss arrest and search warrants, invoice from company and deposit receipt for check, etc., because "they include public records and other documents either central to the Plaintiff's claim or sufficiently referred to by inference in the Complaint, and the authenticity of these documents is not disputed"); decisions in n. 8.

Consideration of the Commonwealth's Attorney's Report and press conference also "furthers the policy of '[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based.'" *Jeffrey M. Brown Assoc., Inc. v. Rockville Center, Inc.*, 7 F. App'x 197, 202-3 (4th Cir. 2001) (affirming Rule 12(b)(6) dismissal) (alterations in original).

9

Warner's medical records regarding "Warner's psychiatric conditions, history, treatment and medication," as the Complaint vaguely asserts, Doucette did not even reveal Warner's psychiatric diagnosis, and did not reveal any specific or sensitive information such as plaintiff conclusorily asserts in the Complaint. *See* Commonwealth's Attorney's Report at p. 4, and press conference *passim*.[14]

And while Doucette amply respected any privacy or other right of Warner, in the

---

[14]While the Complaint does not appear to be trying to include in plaintiff's claim any reference to the injury Warner sustained from being shot (Commonwealth's Attorney's Report p. 8), the injury Warner sustained from the shooting was widely promulgated in the public record, including by the plaintiff and Warner and his family and through the plaintiff's attorney, long before the Commonwealth's Attorney issued his Report and held the press conference. *See, e.g.*, https://www.newsadvance.com/news/local/man-shot-at-hospital-moved-to-uva/article_04815a8e-227c-5d2a-b989-2953ed18b0fb.html (January 15, 2016 news article, reporting: "Warner's attorney, Paul Valois of James River Legal Associates, said Friday in a news release 'Jonathan underwent a surgical procedure to prevent potentially lethal blood clotting. As of 8:10 p.m., he remains in critical condition in the Intensive Care Unit and is 100% dependent on a respirator.' In a phone conversation Friday night, Valois said Warner is paralyzed from the waist down. On Friday morning, Warner's mother, Ruth Ann Warner-Bushey, said on Facebook her son 'is taking a turn for the worse' and asked the public for prayers. Warner was moved by ambulance from Centra's Lynchburg General Hospital to UVa on Wednesday after Warner's family chose to have him relocated, Valois said.");
https://www.newsadvance.com/news/local/medical-condition-improves-for-man-shot-at-lynchburg-hospital/article_a07bc2fa-be17-11e5-b5b3-b71112341a5b.html (January 18, 2016 article discussing another "news release" issued by "family attorney Paul Valois");
https://www.newsadvance.com/news/local/attorney-for-man-shot-in-lynchburg-hospital-calls-for-independent/article_022621ec-c513-11e5-af9c-2f78d301f6c4.html (January 27, 2016 article, reporting: "A bullet remains lodged in [Warner's] spine and he is paralyzed from the waist down, according to the family's attorney, Paul Valois," and "Valois said he is not involved in the criminal investigation and he has been 'engaged to investigate a civil case.'");
https://jamesriverlegal.com/index.php/site-map/press-releases/01-29-16 (January 29, 2016 press release on plaintiff's attorney's website, referring to "Jonathan's gofundme site" for contributions, and stating among other things that "The family of Jonathan Warner seeks help from the community to raise funds necessary to transfer Jonathan from UVA Medical Center to a spinal injury rehabilitation facility. Jonathan's doctors have determined that he should transfer to a spinal injury rehabilitation facility immediately in order to continue his recovery from the injuries he sustained after being shot") (all last accessed September 20, 2018).

10

Commonwealth's Attorney's June 2018 Report and press conference pursuant to Doucette's obligation to account to the public for his charging decisions as their elected prosecutor, the public domain was, in any event, already saturated well before then with details and specific information regarding Warner's health and psychiatric conditions, history, treatment and medication – put in the public domain mostly by the plaintiff, Warner and his family and through the plaintiff's attorney, and not by Doucette regardless.

Before the Commonwealth's Attorney's Report and press conference in June 2016, plaintiff, Warner and Warner's family, including through their attorney, had publicized that:

- Warner "began exhibiting 'symptoms of anxiety' while eating dinner Sunday," had "an imbalance in his bipolar disorder medications," and went to Lynchburg General Hospital Emergency Department and told them of his "medication problem and history of anxiety";[15]

- Warner had a history of "using 'a variety of drugs' including crystal meth, acid and 'just terrible things that debilitate the body and eat the brain'," and "was committed to the Western State Psychiatric Hospital in Staunton" for a "roughly year-long stay";[16]

- Warner went to the Lynchburg General Hospital "with an acute psychiatric condition," was seeking admission "for adjustment of the medication he takes for schizophrenia," and "was transferred to the Psychiatric Emergency Center for psychiatric assessment";[17]

And plaintiff's attorney had filed a lawsuit, in the name of a different plaintiff (Blakey), in which plaintiff's attorney had filed in the public court record, that:

- Warner went to Lynchburg General Hospital "for treatment of an acute psychiatric illness";

---

[15]*See* n. 9.

[16]*Id*.

[17]Plaintiff's attorney's February 25, 2016 press release letter to the Virginia Attorney General, copying Doucette, attached as Exhibit 3 (*see also* n. 9).

11

- Warner "had not slept for days and was suffering from a poor adjustment of psychiatric medication";

- Warner had an "acute condition" and "posed a threat to safety of himself or others";

- Warner's "psychiatric condition steadily worsened . . . he became paranoid and began to experience intense auditory and visual hallucinations";

- "Warner was suffering from extreme psychosis during his interaction with Mr. Gillespie"; and

- Warner had an Emergency Custody Order taken out against him on application from a Centra physician.[18]

Also before the Commonwealth's Attorney's Report and press conference, Warner's family through plaintiff's attorney had themselves complained, including *via* press release on January 27, 2016, that, "To date, CENTRA officials have not released any substantial information about the events that led to the shooting and *it is crucial that the public be informed of the facts*."[19]

With the Commonweath's Attorney's Report and press conference, Doucette was faithfully carrying out his duties as a prosecutor, and did not violate any privacy right of Ward in doing so, and Doucette is also protected from liability in that regard.

It is respectfully submitted that this action is without merit and should be dismissed, for

---

[18]*Blakey v. Gillespie* Bill of Particulars and Exhibit D (attached as Exhibit 5).

In addition to the *Blakey v. Gillespie* lawsuit and this lawsuit, the plaintiff's attorney has also filed at least one other lawsuit related to the same event. *See* https://www.newsadvance.com/news/local/suit-against-centra-over-shooting-to-move-to-lynchburg/article_07ca2b4a-e76a-11e7-9fc5-875c083d6b59.html (last accessed September 20, 2018).

[19]*See* https://jamesriverlegal.com/index.php/site-map/press-releases/01-27-16 (last accessed September 20, 2018) (emphasis added). For convenient reference of the Court, a copy of that press release letter posted on the plaintiff's attorney's website is attached as Exhibit 9.

12

the independently-sufficient reasons set forth below.

## ARGUMENT

## I.   Standards On Motion To Dismiss

"In recent years, with the recognized problems created by 'strike suits' and the high costs of frivolous litigation, the Supreme Court has brought to the forefront the Federal Rules' requirements that permit courts to evaluate complaints early in the process," reflecting the "policy that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal citation omitted; affirming dismissal for failure to state a claim).[20]

As the Supreme Court has stressed, "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do'."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim against a particular defendant cannot survive a motion to dismiss unless "the plaintiff pleads

---

[20]"A 'strike suit' is an action making largely groundless claims to justify conducting extensive and costly discovery with the hope of forcing the defendant to settle at a premium to avoid the costs of the discovery."  *Francis v. Giacomelli*, 588 F.3d at 193 n. 2.

As the Fourth Circuit has further emphasized:

> [M]any [] provisions impos[e] requirements that permit courts to evaluate a complaint for sufficiency early in the process. Rule 8 itself requires a *showing of entitlement* to relief. Rule 9 requires that allegations of fraud, mistake, time, place, and special damages be specific. Rule 11 requires that the pleading be signed and provides that the signature "certifies" (1) that the claims in the complaint are not asserted for collateral purposes; (2) that the claims asserted are "warranted"; and (3) that the factual contentions "have evidentiary support." And Rule 12(b)(6) authorizes a court to dismiss any complaint that does not state a claim "upon which relief can be granted."

*Id*. at 192-93 (emphasis in original).

13

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.

A claim that is not supported by "[f]actual allegations . . . enough to raise a right to relief above the speculative level" cannot survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555. "*Iqbal* and *Twombly* articulated a new requirement . . . rejecting a standard that would allow a complaint to 'survive a motion to dismiss whenever the pleadings left open the *possibility* that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery.'" *McCleary–Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015) (emphasis and bracketing in original; affirming dismissal), *cert. denied*, 136 S. Ct. 1162 (2016).

It is respectfully submitted that the plaintiff has not stated any claim against Doucette.

## II. Plaintiff's Count One § 1983 "Invasion Of Privacy" Claim Should Be Dismissed

Plaintiff asserts as her Count One, 42 U.S.C. § 1983 Claim – Invasion Of Privacy claim, that Warner's "reasonable expectation of privacy in his health records under the United States Constitution and its Fourth and Fourteenth Amendments" was violated by the Commonwealth's Attorney's Report press release and conference.[21]

### A. Plaintiff Fails To State An Invasion Of Privacy Claim Pursuant To § 1983

As a fundamental matter, plaintiff's conclusory assertion, that Doucette "revealed and redisclosed sensitive content from Warner's health records, discussing with specificity information taken from Warner's medical records,"[22] does not allege specific facts and does not satisfy the pleading standards required for a claim to proceed.

---

[21]Complaint ¶¶ 11-12, 14-16.

[22]Complaint ¶ 12.

14

Furthermore, "there is no general constitutional right to privacy; rather, the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage, and none of these matters is implicated in the present case." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir.1999) (affirming dismissal of § 1983 claim alleging violation of right to privacy). *Accord Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004) ("'the "right to privacy" has been limited to matters of reproduction, contraception, abortion, and marriage. . . .' Since none of these matters is implicated in the present case, the plaintiff's invasion of privacy claim is without merit and must be dismissed") (granting motion to dismiss; ellipsis in original, internal citation omitted); *Bridgeforth v. Potter*, 2011 WL 3102422 (W.D. Va. July 25, 2011) (there is no general federal Constitutional right of privacy, and plaintiff's privacy claim "thus fails on its face to invoke this court's subject matter jurisdiction").[23].

---

[23]*See also Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," affirming Rule 12(b)(6) dismissal of due process claim). The Supreme Court has made clear that it is only "conduct that 'shocks the conscience' and nothing less" that may give rise to such a claim, and "that courts should exercise 'judicial self-restraint' and 'utmost care' in novel substantive due process cases[.]" *Waybright v. Frederick County, Maryland*, 528 F.3d 199, 204, 205 (4th Cir. 2008) (citing Supreme Court decisions)*, cert. denied*, 555 U.S. 1069 (2008). With respect to the Fourth Amendment, "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973). Unreasonableness is a required element of a Fourth Amendment claim, which the plaintiff has the burden of satisfying.

As the United Supreme Court has long emphasized:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.] It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]

*Kokken v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted).

15

Plaintiff alleges no facts implicating infringement regarding any such matters.  Plaintiff's

Count One claim should therefore be dismissed.

Moreover, even if there were assumed to be a constitutional right of privacy implicated by

what Warner alleges as the basis of his claim, such a right does not extend to information

available in the public domain – as was Warner's, *prior* to the Commonwealth's Attorney's

---

The mere assertion of a claim under 42 U.S.C. § 1983 does not confer subject matter jurisdiction, because a complaint must "raise a substantial federal question" for a federal district court to have jurisdiction. *Goldsmith v. Mayor of Baltimore*, 845 F.2d 61, 63-4, 65 (4th Cir. 1988) (even though the plaintiff brought the action under 42 U.S.C. § 1983, the plaintiff "did not raise a substantial federal question" and the district court was thus without jurisdiction, reversing district court and remanding the action for dismissal; "[t]he burden is on the party asserting the jurisdiction of the court to show that jurisdiction does, in fact, exist"); *Accord Garraghty v. Virginia Ret. Sys.*, 200 F. App'x 209, 211-12 (4th Cir. 2006) (affirming dismissal for lack of subject matter jurisdiction 42 U.S.C. § 1983 action that "failed to present a substantial constitutional claim"); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)"; affirming dismissal of action for lack of subject matter jurisdiction because plaintiff's federal claims were not sufficiently substantial).

> [W]hen a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the Constitution  or laws of the United Sates, upon the determination of which the result depends, it is not a suit arising under the Constitution or laws.  And it must appear on the record, by a statement in legal and logical form, such as is required in good pleadings, that the suit is one which does really and substantially involve a dispute or controversy as to a right which depends on the construction of the Constitution or some law or treaty of the United States, before jurisdiction can be maintained on this ground.

*Doby v. Brown*, 232 F.2d 504, 506 (4th Cir.), *cert. denied*, 352 U.S. 837 (1956).  *Accord Baskette v. Commonwealth Attorney*, 2005 WL 1594450 *2  and n.2 (W.D. Va. July 5, 2005) ("plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction," dismissing action; "Negligent conduct does not establish a federal constitutional violation"); *Sloan v. Smith*, 2009 WL 453298 *3 (W.D. Va. Feb. 24, 2009) (complaint referred to federal statutes, but "[e]ven liberally construed, the instant complaint is frivolous, and does not state a viable federal legal claim . . . [a]ccordingly, the court has no subject matter jurisdiction to entertain the complaint," dismissing action)," *aff'd*, 331 F. App'x 245 (4th Cir. 2009).  *See also Haleem v. Quinones*,  2017 WL 4400767 **2, 7 (W.D. Va. Sep. 30, 2017) (sovereign immunity implicates subject matter jurisdiction).

16

Report and press conference, with respect to what plaintiff claims. Indeed, Warner's information was in large put in the public domain by Warner and his family themselves, including through their attorney. Warner had no legitimate expectation of privacy in that to which he vaguely alludes as the basis of his invasion of privacy claims. *Cunningham v. U.S. Veterans Affairs*, 2008 WL 3926452 *2 (W.D. Va. Aug. 26, 2008) (any "right to privacy does not extend to information that is freely available in public records"); *Phillips v. Bailey*, 337 F. Supp. 2d at 806 ("the plaintiff has no legitimate expectation of privacy" in information in the public record).

It is respectfully submitted that plaintiff has failed to state a federal "invasion of privacy" claim, and Count One should be dismissed with prejudice.

**B.      Absolute Prosecutorial Immunity Also Bars Plaintiff's Count One Claim**

Not only does the Complaint fail to state a federal "invasion of privacy" claim, but it is respectfully submitted that Doucette is entitled to absolute prosecutorial immunity with respect to plaintiff's claim. As the United States Court of Appeals for the Fourth Circuit recently stressed in *Nero v. Mosby*, 890 F.3d 106 (2018), in reversing on interlocutory appeal the district court's denial in part of the defendants' motion to dismiss for failure to state a claim, and holding that the prosecutor was entitled to absolute immunity with respect to her conduct that included holding a press conference to explain her decision as to criminal charges:

> Absolute immunity protects "the vigorous and fearless performance of the prosecutor's duty" that is so essential to a fair, impartial criminal justice system. As representatives of the people, prosecutors have a responsibility to enforce the laws even handedly and to exercise independent judgment in seeking justice. "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages."

*Id*. at 117 (internal citations omitted).

While in *Nero*, the prosecutor's press conference explained the prosecutor's decision to bring criminal charges, rather than the prosecutor's decision *not* to bring criminal charges, as here, it is respectfully submitted that the public policy on which absolute prosecutorial immunity is based mandates that absolute immunity apply in both circumstances.  If prosecutors were accorded absolute immunity when they decide to bring charges, but *denied* absolute immunity for the same conduct that differed only in that they decided *not* to be bring charges, the "fair, impartial criminal justice system" that absolute prosecutorial immunity is designed to protect, by protecting prosecutors from the "fear of being harassed by a vexatious suit, for acting according to their consciences," would be lost.  *Id*. at 117-18 ("Without immunity from suit, this threat of retaliatory litigation would predispose prosecutors to bring charges based not on merit").

The sound public policy reasons for cloaking prosecutors in absolute immunity has been stressed by the courts time and time again, and for reasons also apt here.

> A prosecutor is duty bound to exercise his best judgment both **in deciding which suits to bring** and in conducting them in court.  The public trust of the prosecutor's officer would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

*Imbler v. Pachtman,* 424 U.S. 409, 424-25 (1975) (emphasis added; dismissing on the pleadings on the basis of absolute prosecutorial immunity).  *See also Safar v. Tingle*, 859 F.3d 241, 249, 250 (4th Cir. 2017) ("prosecutor's decision to seek an arrest warrant is protected by absolute immunity," as is the prosecutor's "decision whether to withdraw an arrest warrant," noting the anomaly that would otherwise exist; the "prosecutor's fundamental judgment of 'whether and when to prosecute'" is entitled to absolute immunity); *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996) ("the Imbler Court specified that absolute immunity protects prosecutors' decisions

18

'whether and when to prosecute'").

Furthermore, as Judge Wilkinson stated in his concurring opinion in *Nero*:

> [A]s all of us should demand from our political leaders, [the prosecutor] explained [his] actions to the public. . . . To say that an elected official exposes [him]self to liability by discharging [his] democratic duty to justify the decisions [he] was elected to make is to elevate tort law above our most cherished constitutional ideals.
> . . .
> Just as *Sullivan* recognized the sacred right of the citizen to criticize his government free from the threat of legal damages, the First Amendment also protects the public official's ability to explain his actions to his constituents. This free exchange between government and governed legitimates and nourishes our democratic system. For the First Amendment was founded on the belief "that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American government."
> . . .
> By advancing a theory of tort liability for explanations of official acts, the [plaintiffs] here strike at the very heart of the democratic dialogue. Courts must repel such attacks. In doing so, we honor our "profound national commitment to the principle that debate on public issues should be unlimited, robust, and wide-open" on all sides.

890 F.3d at 131-32.[24]

It is respectfully submitted that not only has plaintiff failed to state a federal invasion of privacy claim, but Doucette is also protected by absolute prosecutor immunity, and entitled to dismissal of Count One with prejudice for that independent reason.

## C.     In Addition, Doucette Is Also Protected By Qualified Immunity

In addition to plaintiff failing to state a federal invasion of privacy claim and dismissal

---

[24]*See also* 890 F.3d at 132 ("the proper avenue for regulating prosecutorial statements is a state's ethical code governing attorneys, not private tort suits") (Wilkinson, concurring); *Imbler v. Pachtman*, 424 U.S. at 429 ("a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers").

19

also being appropriate on the basis of absolute prosecutorial immunity, it is respectfully submitted that Doucette is also entitled to dismissal of this action on the basis of qualified immunity.[25]

Qualified immunity is a question of law to be determined by the court at the "earliest possible stage in litigation," including on a Rule 12(b)(6) motion to dismiss, because it is "an entitlement not to stand trial or face the burdens of litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) ("[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings . . . . Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is '*an immunity from suit* rather than a mere defense to liability'") (internal citation omitted, emphasis in original).

"Qualified immunity shields federal and state officials from money damages *unless* a plaintiff pleads facts showing (1) that the official violated a federal statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (reversing denial of qualified immunity on motion to dismiss; emphasis added). Qualified immunity applies *unless* "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* at 741, 742.

---

[25]The Complaint does not state whether plaintiff asserts her claims against Doucette in an official or individual capacity. Because Doucette retired before plaintiff commenced this lawsuit, he does not have an official capacity in which to be sued. Eleventh Amendment immunity also bars an official capacity claim. *Weiner v. Albemarle County*, 2018 WL 542979 *4 (W.D. Va. Jan. 24, 2018), *aff'd*, 735 F. App'x 102 (4th Cir. 2018). The Eleventh Amendment restricts the federal court's jurisdiction with respect to federal *and* state law claims. *McCoy v. Chesapeake Corr. Center*, 788 F. Supp. 890, 892 (E.D. Va. 1992) ("state may not be sued for violating either state or federal law in federal court unless Congress specifically so provides or the state consents to the suit"), citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).

20

If, in the particular circumstances, the "precedents do not place the conclusion that [the official] acted unreasonably in these circumstances 'beyond debate'," the official is entitled to qualified immunity. *Mullenix v. Luna*, 136 S. Ct. 305, 311 (2015). *Accord Trump Tight, LLC v. Bell*, 188 F. Supp. 3d 565, 569-70 (E.D. Va. 2016) (dismissing action, including Fourth Amendment and Fourteenth Amendment claims, on the basis of qualified immunity; "qualified immunity 'gives ample room for mistaken judgments'"), *aff'd*, 688 F. App'x 201 (4th Cir. 2017).

As the authority cited in this memorandum reflects, Doucette did not violate any clearly established law, and it is respectfully submitted that plaintiff's Count One should be dismissed with prejudice on the additional independently-sufficient ground of qualified immunity.

### III. <u>Plaintiff's Count Two "Invasion Of Privacy" State Claim Should Also Be Dismissed</u>

Plaintiff asserts as her Count Two, Invasion Of Privacy state law claim, that "Warner's rights under [Va.] Code § 32.1-127.1:03" were violated by the Commonwealth's Attorney's Report press release and conference.[26]

#### A. **Plaintiff's State Law "Invasion Of Privacy" Claim Also Fails**

Because plaintiff chose to bring her lawsuit in federal court, her Virginia state law "invasion of privacy" claim is also subject to the federal pleadings standards set out above. Plaintiff's conclusory assertion on which she bases her state law "invasion of privacy" claim is every bit as deficient for such a claim as it is for her federal claim. Plaintiff has not satisfied the pleading standards required for plaintiff's state law claim to proceed either.

Furthermore, Va. Code § 32.1-127.1:03 does not provide a basis for a claim against Doucette, contrary to plaintiff's conclusory assertion. Doucette was not a "health care entity, or

---

[26]Complaint ¶¶ 18, 20-21.

other person working in a health care setting,"[27] nor does the Complaint allege a single fact as to anything in the Commonwealth's Attorney's Report press release or press conference that was private content from Warner's health records.

In addition, disclosure by a prosecutor in accordance with the public duties of his office to explain his determinations as to whether to press criminal charges is not "beyond the purpose for which such disclosure was made,"[28] when Warner's health records were obtained pursuant to the Lynchburg Magistrate's search warrants on testimony from the Lynchburg Police Department in connection with investigation of the incident and the criminal charge of malicious wounding.[29]

Furthermore, as the public record shows (discussed above), Warner waived any right to the privacy of his health records, including through his attorney.[30]

It is respectfully submitted that plaintiff has failed to state a state law "invasion of privacy" claim, and Count Two should be dismissed with prejudice as well.

## B.   Absolute Prosecutorial Immunity Also Bars Plaintiff's Count Two Claim

Not only does the Complaint fail to state a privacy claim under state law, but it is respectfully submitted that absolute prosecutorial immunity also applies with respect to plaintiff's state law claim.  "Indeed, prosecutorial immunity covers a broader range of conduct under Virginia law than it does under federal law."  *Vuyyuru v. Jadhav*, 2011 WL 1483725 *10

---

[27]Va. Code § 32.1-127:1:03 (A).

[28]Va. Code § 32.1-127:1:03(A)(3).  *See also* Va. Code § 32.1-127:1:03(D)(2), (3), (28), (31).

[29]*See* n. 8 and Exhibits 1 and 2.

[30]*See also* Va. Code § 32.1-127:1:03(D)(9) ("[w]hen the individual has waived his right ot the privacy of the health records").

22

(E.D. Va. April 19, 2011) (granting motion to dismiss on the basis of absolute prosecutorial immunity), *aff'd*, 501 F. App'x 294 (4ᵗʰ Cir. Dec. 27, 2012).  *See Andrews v. Ring*, 266 Va. 311, 321 (2003) (prosecutor's role in the "process by which an accused may be charged with a criminal offense in Virginia" is "entitled to absolute immunity from suit").

In addition to the plaintiff failing to state a privacy claim under state law, it is respectfully submitted that Doucette is also protected by absolute prosecutor immunity and dismissal of Count Two with prejudice for that independent reason.

### C.  In Addition, Doucette Is Protected By Sovereign Immunity

In addition to plaintiff failing to state a privacy claim under state law and dismissal also being appropriate on the basis of absolute prosecutorial immunity, it is respectfully submitted that Doucette is also entitled to dismissal of Count Two on the basis of sovereign immunity.

The Virginia Supreme Court has stressed that the doctrine of sovereign immunity is "alive and well" and has been vigilantly maintained in Virginia because it:

> serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation.

*Messina v. Burden*, 228 Va. 301, 307, 308, 311 (1984) (affirming dismissal on demurrer).

*Accord Ligon v. County of Goochland*, 279 Va. 312, 316-17 (2010) (affirming dismissal).[31]

---

[31]"A demurrer is a threshold pleading [], like a Rule 12(b)(6) motion in federal court[.]" *Penn v. Cumberland*, 883 F. Supp. 2d 581, 584 (E.D. Va. 2012).  *Accord Morgan v. Wal-Mart Stores East, LP*, 2010 WL 4394096 *2 (E.D. Va. 2010) ("a demurrer and 12(b)(6) motion are essentially the same"); *Astrop v. Eckerd Corp.*, 2010 WL 1779992 *3 (E.D. Va. 2010) ("[a] demurrer in Virginia is essentially a motion to dismiss for failure to state a claim, like under Rule 12(b)(6)"), *aff'd*, 397 F. App'x 881 (4th Cir. 2010), *cert. denied*, 562 U.S. 1152 (2011).

23

The Virginia General Assembly has specifically preserved immunity for officials such as the Commonwealth's Attorney in amending the Virginia Tort Claims Act, Va. Code § 8.01-195.3: "the individual immunity of judges, the Attorney General, attorneys for the Commonwealth, and other public officers, their agents and employees from tort claims for damages is hereby preserved to the extent and degree that such persons presently are immunized."[32] *See also Weiner v. Albemarle County*, 2018 WL 542979 *8 (defendant "has prosecutorial and sovereign immunity to this claim in his capacity as commonwealth's attorney").

Plaintiff's conclusory assertion that "Doucette acted willfully or with gross negligence in redisclosing the content of Warner's health records on June 1, 2016"[33] does not remove the protection of sovereign immunity.

Here, just as the Virginia Supreme Court held in *Lentz v. Morris* in affirming the dismissal of the action, "[t]he facts do not support a charge of either gross negligence or intentional misconduct." 236 Va. 78, 82 (1988) (affirming dismissal on demurrer on sovereign immunity grounds). *See also Taylor v. City of Charlottesville*, 240 Va. 367, 370 n.1 (1990) (agreeing pleading "'does not set forth factual allegations which give rise to their claims of gross negligence',," and affirming dismissal on demurrer of gross negligence claims). *Accord Young v.*

---

[32]*See also* Va. Code § 8.01-195.3(6) (also specifically preserving sovereign immunity for "any claim arising out of the institution or prosecution of any judicial or administrative proceeding, even if without probable cause"); *Phelan v. Commonwealth*, 291 Va. 192, 194 (2016) ("[t]his Court has repeatedly held that 'the doctrine of sovereign immunity is alive and well in Virginia.' Niese v. City of Alexandria, 264 Va. 230, 238, 564 S.E.2d 127, 132 (2002)," and any statutory waiver of sovereign immunity is in derogation of the common law and strictly construed); *Ligon v. County of Goochland*, 279 Va. at 317 (only the General Assembly can determine whether sovereign immunity should be abrogated for a particular type of legal action).

[33]Complaint ¶ 22.

24

*City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (dismissing state and federal claims in action removed from state court; "To be sure, the complaint throws in words and phrases such as 'deliberate indifference,' 'malicious,' 'outrageous,' and 'wanton' when describing the conduct of the officers. The presence, however, of conclusory legal terms does not insulate a complaint from dismissal" on the pleadings for failure to state a claim).[34]

Indeed, if a plaintiff only had to insert boilerplate conclusions of "gross negligence" or "willfully" into her pleading in order to avoid dismissal on the basis of sovereign immunity, the protection of sovereign immunity that Virginia has long accorded those such as the Commonwealth's Attorney would be eviscerated. Such is not the law.

It is respectfully submitted that plaintiff's Count Two should be dismissed with prejudice on the independently-sufficient ground of sovereign immunity.

## CONCLUSION

Based upon the foregoing, retired Lynchburg Commonwealth's Attorney Michael Doucette respectfully submits that this action should be dismissed with prejudice, along with such other and further relief as is just, including an award of the attorney's fees and costs incurred in the defense of this action.

Michael R. Doucette

––––––––––––––––––

[34]Under Virginia law, "gross negligence requires a showing of 'indifference to such other and an utter disregard of prudence that amounts to a complete neglect of the safety of another person' that would 'shock fair-minded persons.'" *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 592 (W.D. Va. 2015) (dismissing gross negligence claim and citing Virginia state court decisions; "the alleged facts are not sufficiently egregious to 'shock fair-minded persons'"). *Accord Schmidt v. Hunsberger*, 2015 WL 1258961*7 (E.D. Va. Mar. 17, 2015) ("for gross negligence, a plaintiff must also allege facts 'demonstrating "an utter disregard of prudence," and must involve negligence to such a degree "as would shock fair minded [people,]"'" granting Rule 12(b)(6) motions to dismiss), *aff'd*, 615 F. App'x 808 (4th Cir. 2015).

25

By  s/ Carlene Booth Johnson
Counsel
Carlene Booth Johnson VSB No. 36473
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
tel:  (434) 983-5005
fax:  (434) 983-5021
email: perrylawfirm@hughes.net

Certificate

I certify that on September 20, 2018, I electronically filed the foregoing and exhibits with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the following:

M. Paul Valois, Esq.
James River Legal Associates
7601 Timberlake Road
Lynchburg, VA 24502
mvalois@vblegal.com

By  s/ Carlene Booth Johnson
Counsel
Carlene Booth Johnson VSB No. 36473
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
tel:  (434) 983-5005
fax:  (434) 983-5021
email: perrylawfirm@hughes.net

26