CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

07/30/2019
JULIA C. DUDLEY, CLERK
BY:    s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| RUTH ANN WARNER, | ) | |
| As guardian of Jonathan James Brewster | ) | |
| Warner, an incapacitated adult, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:18-cv-00064 |
| | ) | |
| MICHAEL R. DOUCETTE, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

In this case, plaintiff Ruth Ann Warner, as guardian of Jonathan James Brewster Warner, alleges that defendant Michael Doucette, violated Mr. Warner's civil rights.   Doucette was the Commonwealth's Attorney for the City of Lynchburg at the time of the events alleged in the complaint; he has since retired.   Warner alleges that, after Mr. Warner was involved in an altercation at the emergency psychiatric unit of Lynchburg General Hospital and was shot by a hospital security guard, Doucette issued a press release/report and held a press conference explaining his decision not to bring charges against the shooting officer or against Mr. Warner. Warner contends that, both in the press release and during the course of the conference, Doucette divulged Mr. Warner's "sensitive, private medical history" without his consent and "without any justification."   (Compl. ¶ 1, Dkt. No. 2.)

The complaint contains two counts, both of which Warner asserts against Doucette in his individual capacity.   (Pl.'s Opp'n Resp. Mot. to Dismiss 10, Dkt. No. 15 (Opp'n).)   Count One asserts a claim for "invasion of privacy" pursuant to 42 U.S.C. § 1983, referencing both the Fourth and Fourteenth Amendments.   Count Two asserts a state-law claim for "invasion of privacy" premised on Virginia Code § 32.1-127.1:03, which Warner contends creates a right to privacy in the

content of health records and which she contends Doucette violated.   Count Two alleges that Doucette acted "willfully or with gross negligence in redisclosing" Mr. Warner's health records, although the complaint alleges no facts to support that contention.

Pending before the court is Doucette's motion to dismiss.   (Dkt. No. 8.)   After Warner failed to timely respond to that motion, the court issued a show-cause order, directing that Warner explain her failure.   (Dkt. No. 13.)   She then filed her response to the show-cause order, to which Doucette responded. (Dkt. Nos. 14, 16.)

Warner's explanation for filing the response late is that counsel's automatic calendaring software was not working properly because of an inadvertent failure to update a password on his computer.   While the court questions whether this excuse establishes excusable neglect, it is unnecessary to resolve that issue.[1]   Instead, the court simply notes that, even if the court considers the late-filed response to the motion to dismiss (Dkt. No. 15), plaintiff's complaint is nonetheless subject to dismissal for the reasons discussed herein.   Accordingly, the court will grant the motion to dismiss, dismissing Count One with prejudice and Count Two without prejudice, and will dismiss as moot the order to show cause.   The court also will deny Doucette's request for attorney and expert fees in this matter.

---

[1]   Doucette is correct that Warner failed timely to respond to the complaint, and he cites to a number of cases where courts have concluded that the type of excuse offered by counsel here do not establish excusable neglect or good cause for allowing the late-filed reply.   (*See* Def.'s Resp. to Pl.'s Resp. to Order to Show Cause 8–10, Dkt. No. 16.) He also argues that the case should be dismissed for failure to prosecute.   Again, the court instead will address the merits of the dismissal motion, but one point of clarification is warranted as to the failure-to-prosecute argument. Specifically, the court believes that Doucette has misinterpreted the court's prior order concerning Warner's request for *in forma pauperis* status.   Doucette states that the order granted the request to proceed without prepaying fees or costs, but also included language stating that "[i]f the filing fee is not paid within 14 days, the case will be dismissed."   (*Id.* at 2 (quoting Dkt. No. 3).)   He then points out that Warner failed to pay the filing fee.   Although the quoted language appears on that form (and perhaps it is not entirely clear from the form), the box that relates to that language (which is applicable only if the motion is denied) is not checked.   Instead, the court granted the motion to proceed *in forma pauperis*.   Accordingly, no filing fee was required to be paid.

2

## I.  FACTUAL BACKGROUND

The facts alleged in the complaint are simple and straightforward.   Warner was shot by a security guard at Lynchburg General Hospital after he had come to the hospital for psychiatric treatment.   The shooting and the entire altercation that preceded it were captured on video, although there is no corresponding audio.   Doucette investigated the shooting, working in conjunction with the Lynchburg Police Department.   During the course of that investigation, Doucette obtained Warner's health records.

On June 1, 2016,[2] "Doucette conducted a press conference and issued a press release to discuss the results of his investigation and to explain his decision not to charge anyone criminally." (Compl. ¶ 11.)   During the conference and in the text of the press release, Doucette "revealed and redisclosed sensitive content from Warner's health records, discussing with specificity information taken from Warner's medical records, including Warner's psychiatric conditions, history, treatment, and medication."   (*Id.* ¶ 12.).   The complaint itself does not provide additional details about exactly what was revealed.

## II.  DISCUSSION

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'"   *Francis v. Giacomelli*, 588 F.3d 186, 193

---

[2]   Doucette claims that the press conference and related report (what Warner calls the press release) actually occurred on June 3, 2016.   (Def.'s Mem. Supp. Mot. Dismiss 8 n.12, Dkt. No. 9.)   The precise date is immaterial to the court's decision.

(4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Because the court concludes that its consideration of Doucette's sovereign immunity should be analyzed under Rule 12(b)(1), *see infra* Section II-D, it also briefly touches upon those standards. Specifically, in deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R*, 945 F.2d at 768).

## B.  Consideration of Extrinsic Documents

The parties disagree about whether the court can consider documents that Doucette attached to his motion to dismiss. Typically, when a defendant moves to dismiss under Rule 12(b)(6), a

4

court is "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). It may, however, consider a document attached to a motion to dismiss when the document is "'integral to and explicitly relied on in the complaint,'" and when the document's authenticity is unchallenged. *Zak*, 780 F.3d at 606 (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

In this case, the "press release," which is actually an eleven-page report titled "Commonwealth's Attorney's Report on the Shooting of Jonathan Warner," (Def.'s Mot. to Dismiss Ex. 8, Dkt. No. 9–8 (Report)), is certainly integral to the complaint, as is the hour-long press conference, the video of which is available at https://wset.com/news/local/lynchburg-commonwealths-attorney-to-announce-hospital-shooting-findings-today (last visited July 26, 2019) (Press Conf.). The report and the press conference form the basis for Warner's claims, and she does not challenge their authenticity. Indeed, Warner appears to agree that the court can consider those documents: her response notes that any lack of detail in the complaint is remedied by defendant's incorporating the written press release/report, which contains the specific statements made. (Opp'n 8.) Thus, the court concludes that it may consider them in ruling on the motion to dismiss, especially insofar as they provide additional detail (not provided by the complaint's allegations) as to what exactly was revealed about Mr. Warner and his health information.

As to all of the remaining documents, some certainly support some of Doucette's arguments for dismissal. For example, defendant has provided a significant amount of information showing that the information allegedly made public by Doucette had already been made public by Warner's counsel and others associated with Mr. Warner, both in public court filings and in other public statements. Indeed, a number of those documents show that Mr. Warner's family members or his

5

attorney publicly revealed—prior to Doucette's disclosures—significantly more details about his health history and conditions than did Doucette. (*E.g.*, Def.'s Mem. Supp. Mot. Dismiss, Ex. 3, Dkt. No. 9-3 (February 2016 press release by Mr. Warner's counsel that discloses his specific diagnosis, in addition to other information; *id.*, Ex. 5, Dkt. No. 9-5 ("Bill of Particulars" filed in a public case by Warner's counsel the week before Doucette's report was issued); *see especially id.* ¶¶ 28, 33, 34, 39, 47–48, and Exhibit D; *see also* Def.'s Mem. Supp. Mot. Dismiss 4 n.9 (referencing news article that includes statements from Warner's attorney and family members concerning his medical history, https://www.newsadvance.com/news/local/family-questions-lynchburg-hospital-shooting-son-remains-in-critical-condition/article_2468c242-4183-5641-99f0-4bfd2b9f0b40.html (last visited July 26, 2019)).) Nonetheless, the court concludes that those documents are not properly considered on a motion to dismiss because they are neither integral to the complaint, nor relied upon by the complaint.

Regardless, Warner's claims fail as a matter of law on other grounds that do not require the consideration of those documents. Thus, the court will not consider any other information included in Doucette's motion when ruling on the motion to dismiss, except the press release/ report and press conference video.

## C. Count One

Doucette's first argument is that Warner's 42 U.S.C. § 1983 claim in Count One fails to state a federal constitutional claim for a violation of privacy. The court agrees. As an initial matter, the Fourth Circuit has noted that "there is no general constitutional right to privacy; rather, the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir. 1999). As in *Edwards*, "none of these matters is implicated in the present case." *Id.; see also Newhard v. Borders*, 649 F.

Supp. 2d 440, 449 (W.D. Va. 2009) (noting same and dismissing the plaintiff's invasion-of-privacy claim); *Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004) (same).

As another judge of this court has explained, while the Fourth Circuit has recognized that "[p]ersonal, private information in which an individual has a reasonable expectation of privacy is protected by one's constitutional right to privacy." *DM v. Louisa Cty. Dep't of Human Servs.*, 194 F. Supp. 3d 504, 508 (W.D. Va. 2016) (quoting *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990)), the right applies only to narrow categories of information. The *DM* court, for example, declined to hold that the plaintiffs, an adopted child and his adoptive parents, had a constitutional right to privacy in information concerning "the nature and location" of the child's counseling sessions, which related to his claims of child sexual abuse and were disclosed to his abuser. *Id.* at 509. In so ruling, the court noted that "the question is not whether individuals regard [this] information about themselves as private, for they surely do, but whether the Constitution protects such information." *Id.* (citation omitted). The court also cited a number of other cases in which lower courts within the Fourth Circuit declined to recognize a constitutional right to privacy in one's personal medical information. *Id.* (collecting authority). Consistent with that authority, the court does not believe that Mr. Warner has a constitutionally protected privacy interest in the medical information disclosed by Doucette.

In response, Warner contends that the language relied on by Doucette from *Edwards* is dicta. She points the court instead to a Second Circuit case as "easily" holding that a plaintiff "had a protected privacy right in . . . medical records." (Opp'n 3 (citing *O'Connor v. Pierson*, 426 F.3d 187, 202–03 (2d Cir. 2005)).[3] *O'Connor*, however, did not recognize a freestanding claim for

---

[3] Doucette also correctly notes that there can be no privacy right to information available in public records. Thus, although the court does not base its decision, in whole or in part, on documents outside of the complaint, except for the report and the press conference, there is ample information likely undermining any claim that, as of the date of the press conference, Warner had any privacy right in the information Doucette conveyed. *See Cunningham v. U.S.*

"invasion of privacy."[4]   Although it noted that an individual has a protected privacy right in his own medical information, the *O'Connor* court considered that right in the context of a substantive due process claim.   Specifically, it considered whether a school board violated a teacher's substantive due process rights by conditioning his return to work on his being examined by a physician of the board's choosing and his authorizing the release of his medical records to that physician and to the board.   426 F.3d at 201–02.

In her complaint, Warner identifies the Fourth and Fourteenth Amendments as the bases for her claim.   Other than identifying those Amendments, however, neither Warner's complaint nor her response to the motion to dismiss even attempt to explain how the allegations state a claim for a violation of her Fourth or Fourteenth Amendment rights.   The court concludes that she fails to state a claim under either.

First of all, the allegations here do not implicate the Fourth Amendment.   Warner does not allege, nor could she, that Doucette obtained Mr. Warner's medical records through an unreasonable search or seizure.   They were obtained pursuant to a lawful police investigation into a shooting in which he was a victim.   Warner does not even argue that Doucette's redisclosure of them constitutes a search or seizure, let alone explain how.

As to the Fourteenth Amendment and a possible substantive due process claim, the *O'Connor* court noted the high bar for a substantive due process claim based on executive action, as opposed to legislation: "To prevail when challenging executive action that infringes a protected right, a plaintiff must show not just that the action was literally arbitrary but that it was 'arbitrary in the constitutional sense.'"   426 F.3d at 203 (quoting *Collins v. City of Harker Heights*, 503 U.S.

---

*Veterans Affairs*, No. 7:08-cv-00485, 2008 WL 3926452, at *2 (W.D. Va. Aug. 26, 2008) (explaining that any "right to privacy does not extend to information that is freely available in public records").

[4]   Warner does not cite to any other authority to support a freestanding claim for invasion of privacy.

115, 128 (1992)).  Moreover, "mere irrationality is not enough"; instead, "'only the most egregious official conduct'" that "'shocks the conscience' will subject the government to liability for a substantive due process violation based on executive action."  *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Even characterized as a substantive due process claim, the facts alleged by Warner wholly fail to meet that high bar.  Her allegations concerning Doucette's conduct fall far short of "mere irrationality," let alone conscience-shocking, egregious conduct.  This is true based on the general and conclusory allegations in the complaint, but is even more evident when the court examines the report and the press conference to see the actual information Doucette disclosed. The complaint offers general descriptions about "sensitive, private medical history" that Doucette allegedly released as part of his announcement of his charging decision.  (Compl. ¶ 1.)  It also accuses Doucette of "discussing with specificity information taken from [Mr. Warner's] medical records, including [his] psychiatric conditions, history, treatment and medication."  (Compl. ¶ 12.)  The press release/report and press conference video paint a different picture.

In fact, Doucette did not reveal any specific diagnosis Warner may have had, identify any medications he was taking, or otherwise reveal *specific* medical information.  Indeed, Doucette expressly declined to provide that information during the press conference, referencing instead simply that Mr. Warner had "significant psychological" issues.  (*See* Press Conf. at 55:18-55:34.)

The extent of the "disclosure" in the report regarding Mr. Warner's mental health was that "Warner has suffered for some time with significant psychological disorders that require medication to keep under control.  On the night he went to the hospital, Warner had not been taking his medication for several days." (Report 4.)  The report also describes, as conveyed by Warner's brother at the time he came to the hospital, his behavior in the preceding two weeks, which consisted of a single sentence.  Notably, the entirety of this information is contained in two

9

paragraphs of an eleven-page report. The report also references that Doucette believed that Mr.

Warner is "now paralyzed from the T7 vertebrae down, and attributes that information to "medical

reports, press releases from [Warner's counsel, also counsel in this lawsuit], and media reports."

(Report 8.) That was the extent of the information conveyed. And it is also worth noting that the

mere location of the shooting—the secured psychiatric emergency center (PEC) at the hospital—

was indisputably public knowledge at the time of Doucette's press conference. That alone conveys

that Warner was a patient there for purposes of emergency psychiatric treatment. As is now clear,

then, Doucette's statements revealed very little information from Warner's records and used broad,

non-specific language in describing it.

Doucette's conveying that information in the context of explaining his charging decision to

the public is not irrational, as required to state a substantive due process violation. Regardless of

whether he is entitled to absolute immunity for his actions,[5] the decision itself by Doucette as to

whether to charge anyone was clearly a prosecutorial function. *Safar v. Tingle*, 859 F.3d 241, 249

(4th Cir. 2017) (explaining that the "prosecutor's fundamental judgment of 'whether and when to

prosecute'" is entitled to absolute immunity). And although Warner characterizes the press

conference as a "political" act (apparently intending a negative implication), a prosecutor's

explaining his charging decisions to the public is not irrational, unprofessional, or unreasonable.

Indeed, as Judge Wilkinson recognized in his concurring opinion in *Nero v. Mosby*, 890 F.3d 106

(4th Cir.), *cert. denied*, 139 S. Ct. 490 (2018), in which the plaintiffs asserted defamation claims

against a prosecutor based on comments she made during a press conference, such public statements

serve an important function:

> [The defendant prosecutor] is an elected official . . . . As any of us
> would expect of our political leaders, [she] responded to a crisis. And
> as all of us should demand from our political leaders, [she] explained

---

[5] *See infra* note 6.

her actions to the public. At a press conference, she read from a charging document, praised investigators, and explained the basis of the prosecution. To say that an elected official exposes herself to liability by discharging her democratic duty to justify the decisions she was elected to make is to elevate tort law above our most cherished constitutional ideals.

*Id.* at 131–32 (4th Cir.) (Wilkinson, J., concurring), *cert. denied*, 139 S. Ct. 490, (2018). *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993) (declining to confer absolute immunity for a press conference, but recognizing that "[s]tatements to the press may be an integral part of a prosecutor's job . . . and they may serve a vital public function").

Moreover, it can hardly be disputed that the cursory information Doucette presented regarding Mr. Warner likely was necessary to a full understanding of his decision. Doucette's opinion that the guard should not be charged was based on all of the preceding events, which would have made little sense without noting that Mr. Warner was suffering from psychological illness at the time. Likewise, although the focus of the report was certainly on the decision not to charge the security guard, the report also addressed Doucette's decision not to charge Mr. Warner with assault. As part of that discussion, certainly, Mr. Warner's mental health played a key role. Thus, discussing his mental status, at least in general terms, was directly relevant to the decisions made in the report.

In short, Doucette's conduct does not even approach "the most egregious government action" necessary to support a substantive due process claim. *Cty. of Sacramento*, 523 U.S. at 846. Accordingly, the court concludes that Warner has failed to state a claim in Count One, and it will dismiss that claim with prejudice.[6]

---

[6]  In light of the court's ruling, it does not reach the other grounds for dismissal asserted by Doucette, which include assertions of both absolute and qualified immunity. It notes, however, that it is not entirely clear that absolute immunity would apply in this context. Whether or not Doucette was functioning as a prosecutor is, perhaps, open to debate. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31(1976) (directing courts to apply absolute prosecutorial immunity only when the defendant was functioning as a prosecutor in performing the acts giving rise to the claim). While the *Imbler* test is by nature fact-specific, there are cases holding that the actions of prosecutors during press conferences were not protected by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 277–78 (1993) (holding

11

**D. Count Two**

Turning to Warner's state-law invasion of privacy claim, the court questions at the outset whether the statute relied upon by Warner provides for a private right of action. The Supreme Court of Virginia, albeit in an unpublished decision, has ruled that it does not. *Shumate v. City of Martinsville*, No. 151285, 2016 WL 5327477, at *2 (Sept. 22, 2016). Thus, even assuming that Doucette was covered by the statute and violated it, both of which are propositions challenged by him, it would not give Warner a cause of action. To the extent Warner is instead asserting some type of common law claim for invasion of privacy, "no such cause of action exists under Virginia law." *Wiest v. E-Fense, Inc.*, 356 F. Supp. 2d 604, 612 (E.D. Va. 2005); *see Booker v. Dominion Virginia Power*, No. CIV.A. 3:09CV759, 2010 WL 1848474, at *4 (E.D. Va. May 7, 2010) (holding same). There is a statutory claim in Virginia, but it cannot be based on "public disclosure of true, embarrassing private facts about the plaintiff," only on misappropriation of the plaintiff's name or likeness for commercial purposes. *Booker*, 2010 WL 1848474, at *4. The claim here is not a misappropriation claim and thus cannot be brought under Virginia's invasion-of-privacy statute. These reasons, too, appear to provide a basis for dismissal of Count Two.

Doucette did not raise either of these defenses, however. Instead, he advances a number of other grounds for dismissal. At least one of them—the defense of sovereign immunity—bars Warmer's claim in its entirety, and so the court will not address the remainder.[7] A state's

---

that a prosecutor's statements to the media were not entitled to absolute immunity, but were protected by qualified immunity, and explaining that there was no historical precedent for granting "common-law immunity for a prosecutor's out-of-court statements to the press"); *see also Ostrzenski v. Seigel*, 177 F.3d 245, 250 (4th Cir. 1999) ("[A]bsolute immunity is unavailable when a prosecutor conducts a press conference or when he fabricates evidence concerning an unsolved crime.") (quoting *Buckley*, 509 U.S. at 272–78)).

[7] As with the federal claim, Doucette asserts the defense of absolute immunity, an issue the court does not reach here. *See supra* note 6. Doucette also contends that the Virginia statute relied upon does not provide a basis for a claim against him because he is not a "health care entity, or other person working in a health care setting," as referenced in Virginia Code 32.1-127.1:03. Relatedly, Doucette contends that "disclosure by a prosecutor in accordance with the public duties of his office to explain his determinations as to whether to press criminal charges is not 'beyond the purpose for which such disclosure was made.'" Again, because this claim is clearly subject to dismissal on the grounds of sovereign immunity, the court does not reach this ground, either.

immunity from suit also can extend to individual state actors or employees named in their individual capacities in state-law claims.  *Messina v. Burden*, 321 S.E.2d 657, 661–62 (Va. 1984).   In general terms, sovereign immunity will shield state employees from liability for acts of simple, but not gross, negligence, where the acts are discretionary and not ministerial.  *Colby v. Boyden*, 400 S.E.2d 184, 186–87 (Va. 1991).   Moreover, although Virginia has waived its immunity with regard to certain types of claims under the Virginia Tort Claims Act, it has also made clear that "the individual immunity of judges, the Attorney General, attorneys for the Commonwealth, and other public officers, their agents and employees from tort claims for damages is hereby preserved to the extent and degree that such persons presently are immunized."   Va. Code § 8.01-195.3.

Warner does not argue that Doucette was engaged in ministerial acts, and the court concludes that the issuance of his report and the press conference to explain his decision not to charge the guard or Mr. Warner clearly were discretionary acts.[8]   Thus, the only question is whether Warner has alleged facts to show gross negligence by Doucette.   It is true that Warner's complaint sets forth conclusory language attempting to paint Doucette's actions so as to avoid sovereign immunity.   (*See, e.g.*, Compl ¶ 22 (alleging that Doucette "acted willfully or with gross negligence in redisclosing the content of Warner's health records"); *id.* ¶ 21 (describing Doucette's actions as "without any legal justification").   It is also true that he asserts Doucette acted "intentionally," although he does not allege any intentional tort.

But in ruling on a motion to dismiss, the court looks to well-pleaded *facts*, not conclusions of law.   *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (affirming dismissal of

---

[8]   In determining whether immunity extends to Doucette for the claims here, the court is guided by the factors set forth in *James v. Jane*, 282 S.E.2d 864 (Va. 1980), which asks the court to evaluate "(1) [t]he function the employee was performing; (2) [t]he state's interest and involvement in that function; (3) [w]hether the act performed by the employee involved the use of judgment and discretion; and (4) [t]he degree of control and direction exercised by the state over the employee."   *Pike v. Hagaman*, 787 S.E.2d 89, 92 (Va. 2016).   Neither party has addressed these factors, but the court has independently considered them.

claims and noting that words like "deliberate indifference," "malicious," outrageous" and "wanton," all of which were used to describe the officers' conduct, were "conclusory legal terms" that did not "insulate [the] complaint from dismissal"). Indeed, courts often dismiss on the grounds of sovereign immunity, even as to claims of gross negligence, when the factual allegations in the complaint fail plausibly to allege conduct constituting gross negligence. *E.g.*, *Simpson v. Virginia*, No. 1:16-cv-162, 2016 WL 3923887, at *9–10 (E.D. Va. Sept. 30, 2016); *Hales v. City of Newport News*, No. 4:11-cv-28, 2011 WL 4621182, at *8 (E.D. Va. Sept. 30, 2011); *Roach v. Botetourt Cty. School Bd.*, 757 F. Supp. 2d 591, 597–98 (W.D. Va. 2010); *Muse v. Schleiden*, 349 F. Supp. 2d 990, 1000–01 (E.D. Va. 2004); *Hedrick v. Roberts*, 183 F. Supp. 2d 814, 824 (E.D. Va. 2001).

In this case, the facts reveal nothing close to a level of gross negligence, if they allege negligence at all. In Virginia, "gross negligence" requires a showing of "indifference to such other and an utter disregard of prudence that amounts to a complete neglect of the safety of another person" such that it would "shock fair-minded persons." *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 592 (W.D. Va. 2015). Warner's allegations do not satisfy this high bar.

As noted in discussing Count One, Doucette revealed only broad medical information about Mr. Warner, and that information (that Mr. Warner had psychological conditions and had not been taking his medication) was an important part of, and directly related to, his decision not to charge the guard or Warner. Nothing in his report or his comments at the press conference suggest that he was intentionally trying to divulge sensitive or confidential information or that he was acting with an utter disregard of prudence. To the contrary, he declined to provide more detailed information at the press conference (including the medication Mr. Warner was to receive and his diagnosis or diagnoses), and he explained that part of his reason for not providing that information was to respect Mr. Warner's privacy. (Press Conf. at 55:18–55:34.) At worst, then, the factual allegations reflect that he erred in divulging some general information, but the information he conveyed was important

to his charging decisions and nothing about his conveyance of that information reflects conduct constituting gross negligence.   Accordingly, Doucette is entitled to immunity from this claim, and Count Two will be dismissed without prejudice for lack of subject-matter jurisdiction.[9]

**E.   Defendant's Request for Fees**

As part of his motion to dismiss, Doucette has requested an award of his attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).   (Mot. Dismiss 1, Dkt. No. 8.)   These provisions allow the court to award attorneys' fees and expert fees to the prevailing party with regard to a Section 1983 claim.   As the Fourth Circuit has explained, "[w]hen the prevailing party is the defendant, the attorneys fees should be awarded if the court finds 'that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith.'" *DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999) (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)).   Doucette's request was not briefed in his supporting memorandum and was arguably waived.   In any event, the court has considered the request and will deny it.

## III.   CONCLUSION

For the reasons stated above, the court will grant defendant's motion to dismiss the complaint, dismissing Count One with prejudice and Count Two without prejudice, but will not award defendant any fees under 42 U.S.C. § 1988.   An appropriate order will follow.

Entered: July 30, 2019.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[9]   Although it was previously undecided, the Fourth Circuit has recently clarified that sovereign immunity is a jurisdictional bar and a motion to dismiss on that ground should be analyzed under Rule 12(b)(1).   *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.").

15